IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAVID LAWTON                                                                    PLAINTIFF

V.                              No. 4:22-CV-340-DPM-ERE

SOCIAL SECURITY ADMINISTRATION                              DEFENDANT

## RECOMMENDED DISPOSITION

This Recommendation has been sent to Chief United States District Judge D. Price Marshall Jr. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen days of the date of this Recommendation. If you do not object, you risk waiving the right to appeal questions of fact and Chief Judge Marshall can adopt this Recommendation without independently reviewing the record.

## I.     Background

Mr. David Lawton filed an application for social security benefits due to two strokes and memory issues. *Tr. 193*.

Mr. Lawton's claim was denied initially and upon reconsideration. An Administrative Law Judge ("ALJ") held a telephonic hearing on January 25, 2021, where Mr. Lawton appeared with his lawyer. *Tr. 39-66*. The ALJ heard testimony from Mr. Lawton and a vocational expert ("VE"). On May 3, 2021, the ALJ issued

1

a decision finding Mr. Lawton was not disabled. *Tr. 16-28*. The Appeals Council denied Mr. Lawton's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-7*.

Mr. Lawton, who was sixty-one years old at the time of the hearing, graduated high school and has past relevant work as a fork-lift driver and warehouse worker. *Tr. 57, 59-60.*

## II.    The ALJ's Decision[1]

The ALJ found that Mr. Lawton had not engaged in substantial gainful activity since May 31, 2019, the alleged onset date. *Tr. 17*. The ALJ concluded that Mr. Lawton had the following severe impairments: moderate to severe right carpal tunnel syndrome; coronary artery disease, with left carotid endarterectomy; hypertension; hyperlipidemia; depression; and post-traumatic stress disorder ("PTSD"). *Id*. The ALJ concluded that Mr. Lawton did not have an impairment or combination of impairments that met or equaled the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

According to the ALJ, Mr. Lawton had the residual functional capacity ("RFC") to perform medium work with the following limitations: (1) occasional handling and fingering on the right; (2) simple, routine, and repetitive tasks, with few variables and little judgment required; (3) simple, direct, and concrete supervision; and (4) social interaction incidental to the work performed. *Tr. 20*.

In response to hypothetical questions incorporating the above limitations, the VE testified that a significant number of potential jobs were available in the national economy, including amusement park worker, black oxide coating equipment tenderer, core maker machinist III, and contact acid plant operator helper. *Tr. 27, 64-65*. Accordingly, the ALJ determined that Mr. Lawton was not disabled.

### III.  Discussion

#### A.  Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that

supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.   Mr. Lawton's Arguments for Reversal

Mr. Lawton contends that the Commissioner's decision is not supported by substantial evidence, because the ALJ erred in: (1) not fairly and fully developing the record; (2) failing to properly assess Mr. Lawton's neurocognitive impairments, including the effects of his PTSD on his RFC; and (3) the RFC determination. *Doc. 8 at 2-3*. After carefully reviewing the record as a whole, the undersigned recommends reversing the Commissioner.

### C.   Analysis

Mr. Lawton argues the ALJ erred at Step Two by finding that his CVAs (cerebrovascular accidents a/k/a strokes) and related neurocognitive impairments were non-severe. *Doc. 8 at 10, 16*. The record is undisputed that Mr. Lawton suffered two strokes, which resulted in neurocognitive impairments. The issue is whether the ALJ properly analyzed these impairments when she found they were non-severe and would not impact his ability to work.

The ALJ noted that: (1) Mr. Lawton "suffers from cerebrovascular accident (CVA) with *no physical residuals*" and (2) "there is little evidence during the period at issue indicating any significant limitations as a result." *Tr. 17* (emphasis added).

Strokes can have residuals that are mental, physical, or both, yet the ALJ focuses solely on "physical residuals." Mr. Lawton correctly points out: "Quite troubling, the ALJ's Step Two adjudication is silent as to if neurocognitive disorder is even being evaluated at all . . . The ALJ expressly rejects the CVA but doesn't expressly or implicitly evaluate the neurocognitive disorder." *Doc. 8 at 16.*

The only discussion in the ALJ's opinion of the strokes' neurocognitive effects is a passing reference to an "improvement in memory loss." *Id.* However, the record the ALJ cites is dated June 6, 2019, and actually reads: "He still has some slight worsening of memory since the surgery but overall, he reports he has improved." *Tr. 328*. That same day, another treating physician noted that Mr. Lawton was "having problems with saying what he wants to say." *Tr. 336*.

Improvement does not mean an impairment was fully resolved. And the medical record is to the contrary. In December 2019, speech therapist Jane Barrett, after conducting a speech and language evaluation, documented that Mr. Lawton was unable to: (1) "follow simple 3-step commands"; (2) "repeat sentences of 7 words, or 13 words"; or (3) "recall much information about a short paragraph read aloud to him." *Tr. 417*. He also had "weaknesses" in "repeating numbers, words, and

sentences." *Tr. 418*. Ultimately, Ms. Barrett determined that Mr. Lawton's "[w]eaknesses appear to be short term memory." *Id*.

Dr. Steve Shry (a state agency examiner) noted that Mr. Lawton would have difficulty completing complex tasks because of his memory issues and that he appeared to be impaired "in his ability to complete most tasks mentally within acceptable [time]frames." *Tr. 412*. Dr. Shry also noted that Mr. Lawton "does not appear to be able to perform most basic calculations adequately . . . ." *Id*.

Both Dr. Shry and Dr. Brad Williams (a state-agency reviewer) noted that Mr. Lawton's "vascular insult to the brain" was "severe." *Tr. 74, 92*. Despite claiming that she found these opinions persuasive, the ALJ concluded, without explanation, that Mr. Lawton's strokes were non-severe, and she provided no assessment of the strokes' mental residuals. *Tr. 24*.[2]

Although Mr. Lawton must demonstrate that his neurocognitive impairments are severe, the burden is not high. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). Despite Mr. Lawton's testimony and the supportive medical record, the ALJ to address the substantial medical evidence related to Mr. Lawton's neurocognitive

---

[2] The ALJ's finding also determined that Mr. Lawton's depression was severe, despite Mr. Lawton never being diagnosed with this impairment. *Tr. 17*. This is perplexing. For example, on June 6, 2019, Mr. Lawton's treating physician noted that Mr. Lawton "reports depression." *Tr. 329*. That is not the same as being diagnosed with depression. On July 19, 2019, his treating physician discussed depression with Mr. Lawton, but did not assess him as depressed in his final findings. *Tr. 338*.

6

impairments and the resulting impact on his ability to work. Instead, the ALJ focused exclusively on the lack of "physical residuals." *Tr. 17.*

The ALJ's failure to consider the effect of Mr. Lawton's neurocognitive impairments tainted the RFC determination. See *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (reversing the Commissioner when the ALJ failed to find a medically supported mental impairment to be severe at Step Two); *Peter v. Kijakazi*, No. 4:22-CV-00326-JM-ERE, 2022 WL 16708462, at *4 (E.D. Ark. Nov. 4, 2022), report and recommendation adopted, No. 4:22-CV-00326-JM-ERE, 2023 WL 23025 (E.D. Ark. Jan. 3, 2023) (reversing when an error at Step To "tainted the RFC determination"); *Berry v. Kijakazi*, No. 4:22-CV-00744-JM-ERE, 2023 WL 3246696, at *3 (E.D. Ark. May 4, 2023) (holding that "the ALJ's error at Step Two tainted the entire opinion"); *Polk v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-01016, 2023 WL 2395399, at *3 (W.D. Ark. Mar. 6, 2023), judgment entered, No. 1:22-CV-01016, 2023 WL 2386753 (W.D. Ark. Mar. 6, 2023) ("If the ALJ errs by finding a severe impairment is not severe, the ALJ's disability determination must be reversed and remanded.").

The ALJ has the primary responsibility for assessing a claimant's RFC or residual functional capacity – that is, the most he can do despite the combined effects of all credible limitations, based on all credible evidence in the record. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). Here, the ALJ failed to consider whether

Mr. Lawton's record of neurocognitive impairments might affect his ability to work and require a more limited RFC. This is reversible error.

### IV. Conclusion

The ALJ's legal error warrants reversal and remand.

IT IS THEREFORE RECOMMENDED that the Court reverse the Commissioner's decision and remand this case for further review.

Dated 11 May 2023.

_____
UNITED STATE MAGISTRATE JUDGE